ANDY TRUMBO'S EXR. *v.* MURPHY, TIERNAN & CO.

[Abstract Kentucky Law Reporter, Vol. 7—41.]

**Real Estate Description in Judicial Proceedings to Sell.**

The land ordered sold in a proceeding for its sale which does not describe the land except in a copy of the levy of the marshal upon the land filed with the petition as an exhibit and where the judgment of sale refers to this exhibit for a description does not inform a bidder what land the commissioner is selling. Such a judgment is erroneous.

**Rights of Executor and Legatee to Subrogation.**

An executor, who is also residuary legatee, and who in ignorance of a large debt against the estate he is administering, which debt would make the estate insolvent, pays other debts against such estate out of his individual means, is entitled in equity to be subrogated

to the rights of the creditors so far as their debts were paid by him with his own means.

**Creditors Rights in Insolvent Estate.**

   One creditor of an insolvent estate has no right to a judgment to sell enough of it to pay his debt in full.

APPEAL FROM FRANKLIN CIRCUIT COURT.

June 13, 1885.

OPINION BY JUDGE HOLT:

The will of Andrew Trumbo, which was probated on September 4, 1871, after enumerating what he had theretofore given to his children, and making certain bequests, devised after the payment of his debts, the entire residue of his estate to his son, John Trumbo. The reasons given in the will by the testator for this residuary devise were that he was then owing his said son $819.20; that the latter had been aiding him in his business for four years, and he desired him to continue to do so while the testator lived, and to provide for the wife of the latter during her life. The son at once qualified as executor so nominated in the will and by which he was given full power to sell either publicly or privately and convey by deed, the real estate of the testator. The personal estate of the decedent as shown by the inventory returned by the executor amounted to $1,599.75; and the testator also owned at his death 378 acres of land.

After his qualification the executor proceeded with the settlement of the estate and paid off its indebtedness or the most of it. It appears that the testator at his death owed his son, B. F. Trumbo, a debt of $1,529, and in payment of it the executor conveyed to him an undivided moiety of the 378 acres of land, and that the other indebtedness paid by the executor was paid out of his own means save to the extent of the personal estate, which had come to his hands.

On December 7, 1878, the appellees, Murphy, Tiernan & Co., recovered a judgment in the United States Circuit Court at Covington, Kentucky, against John Trumbo, executor of Andrew Trumbo, for $3,000 with interest from said date and costs to be levied of assets in his hands unadministered.

The liability upon which it was rendered was created during the

34

life of the testator, but it is not shown by the record that he had any knowledge of its existence, as it was for money collected by his law partner, and for which the latter had not accounted. Neither does it appear from the record that his executor had any knowledge of its existence until suit was brought upon it, which was after he had made the payments above named, or at least the most of them. An execution issued upon the judgment and was levied by the United States marshal upon the undivided moiety of the 378 acres of land, which yet remained unsold; but it was not sold for the want of bidders; and then, upon March 25, 1880, this action in equity was brought by the appellees upon their judgment against the executor of Andrew Trumbo and his heirs and devisees, asking that the executor be compelled to report all the estate that had come to his hands, together with a description of the real estate of the decedent, and that, upon a settlement of the executorial accounts, the court decree a sale of a sufficient amount of land to pay the debts of said Trumbo, including their said judgment, and for all proper relief.

The executor, by an answer and amended answer, set up various defenses or attempted defenses to the action, among them being that he had paid the greater portion of the indebtedness of the estate and to the extent of ten thousand dollars, out of his own means, and that the estate was insolvent. He filed a list of the debts he had paid, and alleged that the estate was insolvent. All of the affirmative allegations of his pleadings are admitted, because no reply whatever was filed. The case was referred to the Master Commissioner several times, and the last report filed prior to the judgment shows the insolvency of the estate, and that the executor had paid the most of the indebtedness of the estate. With the record in this condition, however, and while the case was again before the Master Commissioner by a re-reference to ascertain the indebtedness of the estate, and upon the same day which the defendant, John Trumbo, was permitted to file an amended answer and cross petition, setting up additional debts of the decedent paid by him and making the heirs, devisees and creditors defendants to the suit in order to obtain a complete settlement of the estate, the court rendered the judgment now complained of, and by which the moiety of the 378 acres of land was decreed to be sold to pay the debt of the appellees, and the Master Commissioner directed to take the sale bonds therefor payable to them. The judgment was erroneous in failing to sufficiently describe the land ordered to be sold.

It was not described in the pleadings, and only by copy of the levy of the marshal upon the land, which was filed with the petition as an exhibit and the judgment refers to this exhibit for a description of the land to be sold. A bidder could not have told from the judgment what land the Master Commissioner was selling, nor could the Master Commissioner have informed him. In short, the latter could not properly have performed the duty required by him by reference to the judgment alone. *Rop v. Adams,* 13 Bush 370.

It is manifest that the judgment was not only premature, but as the record stood radically wrong. It is urged that as John Trumbo had not renounced the will he took the estate cum onere, and that he can not complain, but it would be grossly and inequitably unjust after he has in good faith and in ignorance of the appellee's debt, so far as is shown by this record, paid the large indebtedness of the estate, or the most of it, mainly out of his own individual means, and when its insolvency is admitted to permit the payment of the appellee's debt in full or, as is probable, take the entire remaining estate to pay it. John Trumbo is certainly entitled in equity to be subrogated to the rights of the creditors so far as their debts were paid by him with his individual means, and to assert any claims he may have of any kind against the testator of his estate, it being insolvent.

One creditor of an insolvent estate has no right to a judgment to sell enough of it to pay his debt in full. This would lead to its sacrifice and to the absurdity of the court paying him in full, knowing that it would have to compel him in part to refund.

If the appellees had the right to subject the estate through a legal remedy, as by an execution, then they are not properly in equity; but in our opinion the creditor of a decedent should reach his estate and obtain payment through the personal representative, and the appellees, having now adopted the proper mode, and being in equity, the estate should be settled equitably as to all the parties interested in it. For this purpose the lower court should not have heard the case until they were before it, and the assets and indebtedness of the estate fully ascertained, and then if the estate finally proved insolvent, it could equalize the creditors and by its judgment settle it equitably as to all interested parties.

Judgment reversed with directions for further proceedings in conformity to this opinion.

Judgment *reversed.*

*A. Duvall, Ira Julian, for appellant.*
*G. W. Craddock, for appellee.*